IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES GRASS,**

    **Plaintiff,**

v.                                                                                                                          **Civil Action No. 1:09cv160**
                                                                                                                    **(Judge Keeley)**

**KAREN WINTERS, M.D.,**
**WILLIAM M. FOX, Warden**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on December 4, 2009. In the complaint, the plaintiff asserts that the defendants were deliberately indifferent to his serious medical needs.

On March 1, 2010, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and Summonses were issued for the defendants.

On March 22, 2010, William Fox filed a Motion to Dismiss with a Memorandum in support. On April 22, 2010, Dr. Winter filed an answer to the complaint. Thereafter, on June 28, 2010, she filed a Motion for Summary Judgment and a memorandum in support. Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro Notice on June 29, 2010, advising the plaintiff of his right to file a response to the defendants' motions. No response has been filed.[1] This case is therefore before the undersigned for a Report and Recommendation on the

---

[1] Prior to the Roseboro Notice, the plaintiff filed a response to the Warden's Motion to Dismiss. However, it contains no substantive argument in opposition to the motion. (Doc. 51).

Motion to Dismiss filed by William Fox and the Motion for Summary Judgment filed by Dr. Winters.

## II. Contentions of the Parties

### A. The Complaint

In his complaint,, the plaintiff asserts that he suffers from a skin condition called "PFB" which makes close shaving medically "unwise." The plaintiff maintains that for the past five years he has had a "no shaving permit" which allows him to shave with beard clippers instead of heaving to shave daily as required by the West Virginia Division of Corrections ("WVDOC "). The plaintiff alleges that when he was transferred to the St. Marys Correction Center ("SMCC"), Dr. Winter refused to issue him a no shave permit. Consequently, the plaintiff maintains that he has to close shave daily which has severely exacerbated his skin condition. In addition, the plaintiff alleges that Dr. Winters refused to provide him with medication to treat his migraine headaches. The plaintiff also alleges that Dr. Winters discontinued all but five of the seventeen medications he was taking when he arrived at SMCC from the Huttonsville Correctional Center ("HCC"). Among the medications he alleges have been discontinued are those that treat his seizure disorder and high blood pressure. Finally, the plaintiff alleges that Dr. Winters has refused to order T-Gel shampoo to treat his severe psoriasis and the lotion he needs to treat his sever skin condition. As relief, the plaintiff seeks injunctive relief as well as compensatory and punitive damages.

### B. Warden Fox's Motion to Dismiss

In his Motion to Dismiss, Warden Fox asserts that the plaintiff's complaint does not include any allegations against him. More specifically, Warden Fox notes that his name does not appear in the body of plaintiff's complaint at all. Because there is no claim against him, Warden Fox contends that he must be dismissed from this action.

**C. Dr. Winter's Motion for Summary Judgment**

In support of her Motion for Summary Judgment, Dr. Winter has submitted her own affidavit, her medical notes regarding the plaintiff's treatment at SMCC, and a letter from the State of West Virginia Medical Board, in effect, dismissing the plaintiff's request that her license to practice medicine be revoked. Dr. Winter argues that the exhibits she has tendered demonstrate that she was not deliberately indifferent to a serious medical need so as to entitle the plaintiff to an award of damages.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley,

355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the

evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Warden Fox**

In order to establish personal liability against a defendant in a § 1983 action, the defendant must

be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Fox. Instead, he appears to allege that he is responsible for his staff and their actions. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Fox. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Fox

could rely on the opinion of Dr. Winter as to whether the plaintiff needed a No Shave Permit, or additional medications, lotions, or shampoo. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Warden Fox, and the complaint against them should be dismissed.

**B. Dr. Winters**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

The subjective component of a cruel and unusual punishment claim is satisfied by showing

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The record before the Court establishes that in September of 2009, the plaintiff was transferred from HCC to SMCC, where he was first seen by Dr. Winter on September 28, 2009. The Progress Notes attached to the Affidavit of Dr. Winter reflect that she saw the plaintiff on nine

8

occasions between September 28, 2009, and November 30, 2009.[3] With respect to the plaintiff's allegation that he is entitled to a No Shave Permit, Dr. Winter clearly states that he does not have pseudofolliculitis (PFB). Moreover, Dr. Winter provides a detailed explanation as to why he does not have this condition. (Doc. 61-3, p. 8). In addition, the materials submitted by Dr. Winter indicate that she saw the plaintiff on November 24, 2009, at which time he requested T-Gel shampoo for his itchy scalp, steroid cream for his itchy skin, and Excedrin rather than Tylenol for chronic daily headaches. However, her examination revealed that the plaintiff's scalp was healthy, with no flaking or lesions of any kind. Moreover, although he had minimally dry skin, there was no flaking. Therefore, Dr. Winter determined that there was no special lotion necessary and no need for T-Gel shampoo. Finally, Dr. Winter concluded that his chronic daily headaches were likely secondary to medication rebound. Therefore, she advised the plaintiff not to take Tylenol or Excedrin for two weeks. (Doc. 61-2, p. 2). Dr. Winter examined the plaintiff for the last time on November 30, 2009, when he requested a re-start of seizure medications. Dr. Winter reviewed his medical records and found note of a distant, poorly-described seizure disorder but no evidence of seizures in the preceding two years. Although his medication history did involve two seizure medications, he was found to be very non-compliant with them, and both had been discontinued long before his arrival at SMCC. (Doc. 61-3, pp 8-9). Accordingly, it appears that Dr. Winter did not believe that the plaintiff required medication.

The sum of this evidence indicates that the plaintiff does not suffer from a serious medical condition. Moreover, the medical records supplied by Dr. Winter demonstrate that the plaintiff has received timely and proper care for his multiple physical complaints. Nothing in the record or in the

---

[3] Dr. Winter was no longer employed at SMCC after November 30, 2009.

9

plaintiff's complaint establishes any facts sufficient to support a finding that Dr. Winter was deliberately indifferent to his medical needs, no matter how minor they might have been, and accordingly, the plaintiff's complaint as it relates to Dr. Winter should be dismissed for failure to state a claim.

## V. Recommendation

For the reasons stated, the undersigned recommends that Warden Fox's Motion to Dismiss (Doc. 43) and Dr. Winter's Motion for Summary Judgment (dckt. 61) be **GRANTED**, and that the plaintiff's complaint (dckt. 1) be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 14, 2010.

    /s/ James E. Seibert
    JAMES E. SEIBERT
    UNITED STATES MAGISTRATE JUDGE